Mabel L. Buchannan v. Supreme Conclave of the Improved Order of Heptasophs, Appellant.

*Beneficial associations—Notice of assessments.*

Where a member of a beneficial association becomes insane, or otherwise incapacitated, the beneficiary named in his certificate acquires such a right in the membership as will entitle him to keep it up by the payment of assessments, and if he notifies the association of the incapacity of the member and requests that notice of assessments shall be sent to himself, and no notice be given to him, the association cannot forfeit the membership for nonpayment of an assessment.

Argued Nov. 5, 1896.   Appeal, No. 170, Oct. T., 1896, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1895, No. 462, on verdict for plaintiff.   Before Sterrett, C. J., Green, Williams, Mitchell, Dean and Fell, JJ. Affirmed.

Assumpsit upon a benefit certificate.

At the trial it appeared that David H. Buchannan was a member of the Tarentum Conclave of the Supreme Order Heptasophs, and that his membership was forfeited for nonpayment of an assessment levied and called on September 1, 1894.   The assessment was announced in the "Advocate," which was the official organ of the order.   The jury returned a verdict in favor of the plaintiff for $5,421.66, upon which judgment was entered.

The facts appear by the opinion of Slagle, J., refusing motion for a new trial, which was as follows :

This was an action upon a benefit certificate issued to D. H. Buchannan and made payable to the plaintiff, his daughter.   A verdict was rendered in favor of plaintiff.   A motion for a new trial was made by defendant, for which a number of reasons have been assigned.   We think there was sufficient evidence for submission to the jury of the questions of fact, and only two of the reasons assigned need to be considered.   The fourth assignment is as follows : " Witnesses for plaintiff having testified that D. H. Buchannan did not to their knowledge receive his copy of the Advocate in September, 1894, the court erred in charging

the jury that mailing the said Advocate at Baltimore to the proper address of D. H. Buchannan was prima facie evidence that he received it, but that that evidence might be rebutted. The court did not instruct the jury as stated. It was contended by plaintiff that the notice published in the Advocate was not the notice required by the constitution of the order; that it was a notice addressed to the conclaves, and should have been addressed to the members. The court held that the notice was sufficient in form. It was further contended that there was not sufficient evidence of mailing. The court submitted the question to the jury as follows : "Now was this placed in the post office properly addressed to Mr. Buchannan at the place of his residence, of which the order had notice upon their records? If so, then notice was given." Counsel for plaintiff contended that she might show that it had not been received. It would probably have been better to have said that it was immaterial whether it had been received or not, the court having practically instructed the jury that there was no evidence to rebut the presumption that it had been received, and may have fallen into an error in saying, " However, if under all the evidence in the case you are not satisfied that this notice was not properly sent and received, the defendant has not made out a case of suspension." But this certainly could have done no harm as the case was submitted to the jury on the question which is the subject of the fifth assignment, as follows : " The court erred in its charge to the jury in stating that Mabel Buchannan, the plaintiff, had an interest in the benefit certificate sued on, and that she was entitled to notice of the calling of assessments, for the nonpayment of which D. H. Buchannan was suspended, if said D. H. Buchannan was mentally incapable of receiving or of understanding the meaning or effect of said notice, there being no provision in the law of the defendant entitling the plaintiff to any such notice in this case." This is not in the language of the court, but is substantially correct. There was some evidence of the incapacity of Mr. Buchannan at and before the assessment of September, 1894, was made, and that it continued until his death. It was also in evidence that before the assessment was made Mabel Buchannan, the beneficiary, had written to the financial officer to whom all assessments were payable, referring to her father's condition, stating that he was careless and liable to neg-

lect them (the assessments), that she had at various times paid them, and asking, " If you find Mr. Buchannan won't pay them please let me know so that I can make an effort to do so." In view of this evidence the court instructed the jury that Mabel Buchannan had an interest in that certificate. It is true that it is one that was subject to the voluntary control of her father; therefore she had certain rights, and if her father was insane or incapable of attending to business she had a right to keep this certificate alive, and when she notified the proper officer, if she did, of her intention to keep it alive, notwithstanding what her father might do, she had a right to do it. If he was capable of acting, no action of hers would keep it alive, because he had the power to destroy her rights at any time. But if he was incapable of acting, she would have the right to say to this offi- cer of this society, " My father is not capable of attending to this matter and I will pay these assessments until he is." The conclusion of the whole matter was stated as follows : " Now if her father was in such actual condition as to make him inca- pable of acting in this matter, she, as the beneficiary, had a right to pay the assessments, and when she asked to be informed of any assessments that were due I think it was the duty of the officers to notify her before any suspension was made, and if they neglected to do it, then they could not work any suspen- sion of this certificate. This is the substantial testimony in the case. There is abundant authority for the position of the plain- tiff's counsel that where the certificate of a beneficial associa- tion provides that a failure to pay any assessment within a certain time shall render it null and void, time is of the essence of the contract, and failure to pay within the time designated renders the certificate null and void, and that where there is no pro- vision of the contract which declares expressly or by necessary implication that sickness or insanity or similar incapacity shall excuse the payment of any assessment on the day it is due, the courts will not grant relief against such contingency. This is simply to hold that every one is bound by his contract deliber- ately made. However, the reasons for this seemingly hard rule is indicated in Bacon on Beneficial Societies, sec. 384, where the author says neither insanity, sickness nor absence is an excuse for nonpayment of assessments, the payment being an act that can be performed by the member or by some other per-

son., This marks the distinction between this case and those to which he finds the rule to have been applied. The statement of the text is possibly too broad, but certainly any one related to the member or interested in his estate may come to his relief under such circumstances, and especially when he is named as his beneficiary under his certificate. The beneficiary has an interest in the certificate, and although it does not become absolute until the death, it is an actually existing interest until annulled under the rules of the order. So long as it remains in force it belongs to him exclusively. Upon the death of a member it passes to the beneficiary as his own and not as representative of a member: Hamill v. Supreme Council, 152 Pa. 537.

If the plaintiff, having knowledge of the assessment, had offered to pay it to the proper officer, there can be no question but that he would be bound to accept it. When the offer was made in advance, good faith required that the beneficiary should have the opportunity to preserve her rights, not against the voluntary act of the member, but as against neglect caused by his inability to act. She was therefore entitled to notice upon proper request made. No notice was given, and it appears from the evidence that neither the plaintiff nor her mother had knowledge of the assessment, and if plaintiff had actual knowledge of the assessment, it would be fatal to her claim. This gives pertinency to the testimony of the plaintiff and her mother that they did not see or know of the notice by publication. The only other question is as to the party to whom the request for notice was made. Plaintiff's request was sent to the financier of the local conclave. He is the only officer with whom individual members come in contact. To him all assessments are paid, and the order should be bound by his acts. The question in this case seems to be new. We think the law ought to be and is as given to the jury, and a new trial must therefore be refused.

*Error assigned* was in submitting the case to the jury.

*J. A. Langfitt* and *S. A. Will*, for appellant.—By the laws of the society, mere nonpayment of an assessment operates as a forfeiture; the member elects every time he is called upon to pay an assessment either to pay within the stipulated time, or

suffer the penalty of loss of membership and its benefits, by neglecting or refusing to pay within that time : Karcher v. Sup. Lodge, 137 Mass. 368 ; Mulroy v. Knights of Honor, 28 Mo. App., 463 ; Rood v. Ry. Pass. & Freight Cond. Assn., 31 Fed. Rep. 62 ; Ill. Masonic Benev. Soc. v. Baldwin, 86 Ill. 479 ; Bacon on Benefit Soc. sec. 385.

The laws of defendant relative to notice are sufficient and binding ; members are entitled only to the notice contracted for, and no other need be given : Force v. Sup. Lodge, 41 Mo. App. 106 ; Weakly v. Ben. Mut., 19 Brad. (Ill. App.) 327 ; Bacon on Ben. Soc. sec. 381 ; Lodge v. Johnson, 78 Ind. 110.

Notice by publication in a newspaper is sufficient when the laws so provide : Pa. Training School v. Ind. Ins. Co., 127 Pa. 559 ; Borgraefe v. Sup. Lodge, 22 Mo. App., 127 ; Ins. Co. v. Knight, 48 Me. 75 ; Northampton Ins. Co. v. Stewart, 39 N. J. L. 486 ; Folsom v. Cook, 115 Pa. 539.

· The mailing of an assessment notice completes the duty of a society, if its laws provide for such mailing, and failure of such notice to reach the assured by reason of miscarriage in the mail or absence of the assured, will not excuse nonpayment of an assessment within the prescribed time : Yoe v. Howard Assn., 63 Md. 86 ; Greeley v. Ia. State Ins. Co., 50 Ia. 86 ; Hansen v. Supreme Lodge, 140 Ill. 304 ; Reichenbach v. Ellerbe, 115 Mo. 588.

Time was the essence of the contract, and the law of suspension for failure to pay, as already said, was self acting, and, perforce, acting upon the neglect of Buchannan, he suspended himself on October 1, 1894, and no affirmative act of his conclave was required to complete the suspension : Hamill v. Sup. Council, 152 Pa. 537 ; Karcher v. Sup. Lodge, 137 Mass. 568.

The insanity or sickness with which D. H. Buchannan was afflicted cannot excuse the nonpayment of the assessment : Smith v. Penn Mut. Life Ins., 11 W. N. C. 295 ; Hawkshaw v. Sup. Lodge, 29 Fed. Rep. 773 ; Carpenter v. Cent. Mut. Life Ass'n, 68 Iowa, 453 ; Yoe v. Ben. Ass'n, 63 Md. 86 ; Klein v. Ins. Co., 104 U. S. 88 ; Thompson v. Ins. Co., 104 U. S. 252 ; Ingram v. Sup. Council, 14 N. Y. 600 ; Grand Lodge v. Jesse, 50 Ill. App. 101 ; Dennis v. Mass. Ben. Ass'n, 120 N. Y. 496 ; Bliss on Life Insurance, sec. 179.

It has been held with substantial unanimity that in mutual

benefit societies the contract is between the society and the member, and that the beneficiary acquires no vested right in the benefit fund which is to accrue upon the death of the member until death takes place: Niblack on Ben. Soc. secs. 212, 272; Howell v. Ins. Co., 44 N. Y. 276; Wheeler v. Ins. Co., 82 N. Y. 543; May on Ins. sec. 550; Kenyon v. Ass'n, 122 N. Y. 247.

*James S. Young,* with him *A. M. Robb* and *S. U. Trent,* for appellee.—We submit that the assertion is too sweeping and the proposition too broad that the members are absolutely bound by whatever law the society chooses to ordain, but that the right is, after all, solely in the courts to determine, not only the meaning of the laws, but also the reasonableness of the laws: Bacon on Beneficial Soc. secs. 85, 86, ed. 1888; Angell & Ames on Corporations, sec. 347; Com. v. St. Patrick Benevolent Soc., 2 Binn. 441; Com. v. German Soc., 15 Pa. 251; Com. v. Penn Benevolent Assn., 2 S. & R. 141; Diligent Fire Co. v. Com., 75 Pa. 291; Beneficial Soc. v. Burford, 70 Pa. 321; Evans v. Phila. Club, 50 Pa. 107.

As a beneficiary, Mabel had such an interest as entitled her to keep the certificate alive, not against her father's voluntary action, but if he were mentally incapable of receiving notice or of paying the assessment. She did not have a vested interest in the certificate, but she had an inchoate interest, one that she had the right to preserve against the whole world except her father only : Bacon on Ben. Soc. sec. 255; Helme v. Phila. Life Ins. Co., 61 Pa. 107.

The law abhors a forfeiture, and therefore he who seeks to enforce it must show that he has been guilty of no unjustifiable or unconscionable conduct: Kister v. Ins. Co., 128 Pa. 553; Scully v. Kirkpatrick, 79 Pa. 324.

PER CURIAM, November 11, 1896:
We find no error in this record. For reasons given by the learned trial judge, in his opinion refusing a new trial, the judgment should not be disturbed.
Judgment affirmed.