This is an action upon a benefit certificate issued by the Modern Woodmen of America on the 6th day of December 1894, to P.H. McEnany, who died on April 5th, 1922. Ann C. McEnany was named as beneficiary in the benefit certificate, and brings this action to recover thereon.
The defendant claims that P.H. McEnany was not a member of the defendant society, in good standing, at the time of his death by reason of not having paid his assessment for the month of March 1922. As a second defense the answer alleges that in March 1922, the plaintiff made application for disability benefit, provided for disabled members in good standing of seventy years of age; that said application was *Page 415 
received at the home office of the defendant society, allowed and approved by the board of directors. An order for $531.90 was issued by the defendant on March 21, 1922, and mailed to McEnany, who, on receipt of the order, endorsed it and deposited the proceeds in the Ryan State Bank at Ryan, Iowa, and McEnany was given a checking account in the sum of $531.90 against which he checked out $181.50. That the benefit certificate was returned, and in place thereof, there was a new complete contract under which McEnany was paid the amount of disability benefits entitled to under the new contract.
The case was tried to the court without a jury; findings of fact and conclusions of law were found by the trial court in favor of the plaintiff, and from a judgment thereon the defendant appeals.
There are only three questions involved in the case 1st: was there a new and binding contract under which the benefit certificate was cancelled? 2d: Was McEnany a member of the Modern Woodmen of American in good standing on the 5th day of April 1922, at the time of his death? 3d: Did he have sufficient mental capacity to enter into the contract? It was stipulated that on March 1, 1922, McEnany was seventy years of age and a member of the Modern Woodmen in good standing, that he made an application for disability benefits under which he agreed to withdraw from the Modern Woodmen, surrender his benefit certificate, and receive $531.90 under his application for disability benefit.
The board of directors of the defendant society received the application, approved the same, allowed McEnany $531.90, that an order was drawn for this sum by the defendant society payable to McEnany, forwarded to, and received by, P.H. McEnany who endorsed and delivered it to the Ryan State Bank of Ryan, Iowa, and the Ryan State Bank gave McEnany credit in a checking account for $531.90 against which he checked out the sum of $181.50. The bank forwarded the order to Oscar E. Aleshire, head banker of the defendant society, at Chicago, Ill. About the time the order reached Aleshire, Aleshire had received a letter from one Phil Schamber, President of the Farmers and Merchants State Bank, Eureka, So. Dak., enclosing receipts for certain assessments of the defendant society, paid by Phil Schamber for McEnany and requesting an assignment to Schamber for an amount sufficient to reimburse him for the payment of the assessment made for *Page 416 
McEnany. Aleshire returned the order to the Ryan State Bank, with notation attached that he was requested by the said Schamber to withhold part of the money. The Ryan State Bank then wrote Aleshire telling him to take out whatever belonged to Schamber and remit the balance to the Ryan State Bank. Aleshire issued two drafts, one for $26.50 and one for $531.90, less the $26.50 made payable to P.H. McEnany and forwarded them to the Ryan State Bank, together with a letter, stating that he enclosed two drafts to P.H. McEnany, the draft for $26.50 to reimburse Phil Schamber. In the meantime McEnany had gone to Williston, North Dakota and the drafts were sent there to him for his endorsement, but he died before they reached him. On April 13, 1922, the Ryan State Bank returned the drafts to the defendant society, with a letter, the last paragraph of which reads as follows: "Will you please send us draft for $505.40 payable to us and send draft for $26.50 direct to Mr. Schamber."
On April 17, 1922, Truman Plantz, General Attorney for the defendant, wrote to the Ryan State Bank in substance, that they could not give a draft payable to the bank, they would "have to leave it as it is and have it endorsed by the administrator. . . ." On April 21, the Ryan State Bank wrote to the attorney for the defendant at length, explaining all the circumstances and that McEnany had indorsed the original order, and had obtained credit to the amount thereof. On April 26, the said Plantz wrote the Ryan State Bank again, stating that they had no authority to make a draft payable to the bank, and the amount will have to be paid to the administrator of his estate. On May 8th, the Ryan State Bank again wrote to Plantz asking him to make out the draft payable to McEnany, and the Ryan State Bank would have an administrator appointed, and on May 9th, Plantz wrote the bank denying the request, and stated that the administrator is the only one to whom payment could be made.
After the death of McEnany the plaintiff filed claim and submitted proof of McEnany's death, claiming the insurance under the benefit certificate. After the making of the claim by the beneficiary the defendant society did issue a draft payable to the Ryan State Bank on February 26th, 1923, for the full amount of $531.90. The Ryan State Bank returned the draft on February 28th, 1923, saying that it had made settlement with the McEnany estate. *Page 417 
There is no merit in the claim of the defendant that McEnany was not a member of the Modern Woodmen in good standing, on the 5th day of April 1922. The receipt for his assessment for February and March was introduced in evidence as an exhibit, and we think that the findings of the lower court, that the plaintiff was a member in good standing at the time of his death, is supported by the evidence. It is the contention of the defendant that the contract was completed when signed and mailed by McEnany, and allowed and accepted by the defendant company.
The matter of disability benefit was first brought to the attention of defendant society by a letter written by McEnany, February 16, 1922, from Ryan, Iowa, to the head clerk, in which he asks for information about getting disability benefit. On February 23, 1922, the head clerk wrote to McEnany at Ryan, Iowa, acknowledging receipt of his letter, stating that he had made a computation, and enclosing a statement showing McEnany's payments by years, amounting to $531.90, and stating, "If after carefully considering the matter you wish to withdraw from the society and receive the amount of your benefit fund payments, you should complete and sign the enclosed application for withdrawal and acknowledge same before a notary public. This application should be attached to your benefit certificate and returned to this office" and it "will be submitted to the board of directors." "The next meeting of the board will begin March 14, 1922." On receipt of this letter and blank application McEnany duly executed the same, acknowledging its execution before a notary public and forwarded it to the home office together with his benefit certificate, and on the 16th of March 1922, the board of directors approved and allowed the disability claim, each member of the board of directors signing the approval, and issued a document which has been called in the record an order, a check, and sometimes referred to as a voucher, and of which the following is a copy.
2593 Head Office No. 1724 Modern Woodmen of America Rock Island, Illinois, Mar. 21, 1922
$531.90
To O.E. Aleshire Head Banker, M.W. of A. Chicago, Illinois. *Page 418 
Pay from Benefit Fund to Patrick H. McEnany, Five Hundred Thirty one and 90/100 dollars.
Authorized by Board of Directors.
J.D. Volz } Chairman } E.E. Murphy } Being the amount for which has made claim R.R. Smith } under the provisions of section 100 of the S.S. Tanner } 1921 revision of the By-Laws of Modern F.R. Korns } Woodmen of America, Benefit certificate No. E.J. Bullard } 163237 having been surrendered. F.B. Easterly }
A.R. Talbot, Head Consul. J.G. Ray, Head Clerk.
On the back is the following:
 Take Notice.
This order must be endorsed by the payee, whose signature must be attested by two witnesses. The endorsed order should be mailed direct to O.E. Aleshire, Head Banker, M.W. of A. 175 W. Jackson Boulevard, Chicago, Ill., who, if the endorsement is regular and complete, will mail draft for the full amount named in the order to the post office address supplied by the payee. This order is not assignable and will be paid only to the person named herein.
Patrick H. McEnany Signature of Payee. Ryan, Iowa Address of Payee.
Rosa Summers } } Witnesses to signature of Payee. J.J. Dolphin }
This is an order drawn on O.E. Aleshire, head banker of the defendant society. It authorizes him to pay from benefit fund, to P.H. McEnany $531.90. It is not a payment of the disability benefit, it is only an order to pay.
If there was a new contract as claimed by the defendant, it was an executory contract. The application states: "I hereby agree that if *Page 419 
said Modern Woodmen of America shall pay to me the said sum above mentioned ($531.90) said payment and this application shall constitute a withdrawal by me from said society as a beneficial member thereof, and a cancellation of said benefit certificate, and I hereby release said Modern Woodmen of America from any and all liability. . . . I have attached my said benefit certificate . . . and hereby surrender the same to Modern Woodmen of America. . . ."
In § 100 of the By-laws of the defendant society, relating to disability benefits to members seventy years of age, there is this provision: "And upon complying with such rules and regulations as the executive council may provide and require in making such withdrawal or release, he (the applicant) shall be entitled to receive from the benefit fund of the society at thetime he surrenders his benefit certificate and furnishes saidrelease, a disability benefit equal to all benefit assessments paid by him on account of the benefit certificate surrendered."
There is no claim that McEnany did not comply with all of the regulations and the by-laws. The contention is, that the application was accepted, the claim allowed and paid, and there is endorsed on the application, "Claim filed March 2, 1922. Claim allowed March 16, 1922. Paid March 21, 1922." March 21, 1922, is the date of the order to the head banker, defendant's exhibit 7. The defendant society does not contend that this order was a payment. No instructions were sent to McEnany with this order, at least none are in the record. He received it and apparently thought it was a payment and the banker at Ryan, Iowa, must have been of the same opinion when the banker cashed it, gave McEnany credit therefor, and sent it to the head banker for payment. The head banker refused to recognize it as a payment, and sent drafts payable to McEnany, but the drafts did not reach McEnany during his lifetime. Several letters passed between the head banker and the Ryan State Bank, the banker demanding payment for the money advanced, and the head banker of the defendant society refusing to recognize it as a claim. It was finally referred to the attorney for the defendant society, who wrote to the Ryan State Bank stating, that he did not see how they could make a draft payable to that bank; that it was better to leave it as it was and have it endorsed by the administrator of the estate. After receiving the two letters from the general attorney of the defendant *Page 420 
society the Ryan State Bank wrote again on May 8, 1922, asking them to make a draft payable to the order of McEnany and that they would have an administrator appointed, and on May 9, 1922, the general attorney again refused to comply with the request. On June 15, 1922, the Ryan State Bank wrote to the general attorney asking for the return of the two drafts, one for $505.40, and one for $26.50, and under date of June 22, the general attorney for the defendant society again refused to recognize the claim of the bank. On December 9, 1922, the general attorney wrote the Ryan State Bank for information, and on December 14, the bank answered giving the name of the attorney for the beneficiary, stated the amount of the claim of the bank, and closing the letter as follows, "Please advise us whether or not you are willing to protect us on the amount we claim." December 16, 1922, the general attorney writes: "We have not yet acted upon the claim of the beneficiary. . . . It occurs to me that whatever our obligation is, it is to the estate of P.H. McEnany, and you should file claim against the estate. If the facts shape themselves so that we can make payment to the estate, the amount would be sufficient to cover your claim." After the defendant society had disallowed the claim under the benefit certificate, it issued a draft to the Ryan State Bank on February 26, 1923, for $531.90, the full amount of the disability claim, which was returned to the defendant society with the information that the bank claim was paid by the McEnany estate.
In support of its contention that there was a new completed contract the defendant relies on the case of Northwestern Mut. L. Ins. Co. v. Joseph, 31 Ky. L. Rep. 714, 12 L.R.A.(N.S.) 439, 103 S.W. 317, and a number of authorities along the same line. In the Kentucky case the company notified the assured in writing that the Tontine dividend period would mature or terminate on May 25, 1901, and requested him to make an election as to which one of the options offered he would accept. On May 25, 1901, he elected to accept the cash value of the policy which then amounted to $1,124.52, and on that day signed a receipt for the amount of the cash payment, and also an order directing the company to pay one T.W. Buell the amount of a note due him, which was secured by pledge of the policy, and deliver the papers to the general agent of the company, who forwarded them to the head office, and the court held, that the contract was complete when the papers were *Page 421 
placed in the mail. It will be noticed that there is no condition in the application in the Kentucky case. It is an unconditional acceptance of the option, and the decision is in accordance with the great weight of authority. This decision and the others cited do not apply to the case at bar.
The application for disability benefit was prepared by the defendant society and in accordance with § 100 of the By-Laws. It is not like the Kentucky case, an unconditional surrender of the policy, it contains a specific "condition precedent, viz.," "I hereby agree that if the said Modern Woodmen of America shall pay to me the said sum above mentioned, ($531.90) said payment andthis application shall constitute a withdrawal by me from saidSociety as a Beneficial member thereof, and a cancellation ofsaid Benefit certificate."
When does the applicant withdraw from the society, and when is the benefit certificate cancelled? The applicant withdraws, and the benefit certificate is cancelled when the Modern Woodmen of America pays to the applicant the sum of $531.90, and not before. Payment and the application constitute the withdrawal and the cancellation. This construction is in harmony with § 100 of the By-Laws, which provides "that the applicant is entitled" to receive from the benefit fund of the society at the time he surrenders his benefit certificate and furnishes said release, a disability benefit equal to all benefit assessments paid by him." When is he entitled to receive payment? He is entitled to receive payment at the time he surrenders his benefit certificate. It is clear that the two acts are simultaneous and that the benefit certificate is in full force and effect until the payment is made; in other words, the payment is a condition precedent to the cancellation of a benefit certificate, and payment must be made before the member loses the rights of a holder of a benefit certificate. Under § 5771, Comp. Laws 1913, "A condition precedent is one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." In the case at bar the right to cancellation of the benefit certificate depends upon the payment of the disability benefit. A condition precedent in an insurance policy is recognized and enforced by the great weight of authority. § 70, page 271, vol. 1, Joyce on the Law of Insurance, and citing in support of the text decisions from Washington, Vermont, Arkansas, California, *Page 422 
Colorado, Illinois, Indiana, Kentucky, Massachusetts, Michigan, Minnesota, Nevada, New York, North Carolina, Ohio, Pennsylvania, Virginia, and Iowa and many federal decisions.
Since there was no payment made in the case at bar, and the assessments had been paid up to April, 1922, the benefit certificate of McEnany was in full force and effect at the time of his death and the beneficiary is entitled to recover thereon. It is not necessary for us to go into the question of the competency of McEnany to make a contract. Judgment of the lower court is affirmed.
CHRISTIANSON, Ch. J., and NUESSLE, JOHNSON, and BIRDZELL, JJ., concur.