## Powanda et al., Appellants, *v.* Pido et al.

Argued March 25, 1931.  Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART and SCHAFFER, JJ.

*F. T. Weil,* of *Weil, Christy & Weil,* with him *Paul N.
Barna,* for appellant.—Where at a lawful meeting of a
church corporation it is unanimously decided to sell the
corporation property and a petition for leave to sell
under the Price Act is filed pursuant thereto, a bishop
cannot interfere with and oppose the sale by forcibly
installing, on his sole initiative, a priest in the church
and parish house after the corporation has decided to
cease functioning as a church on the consummation of

the sale: St. Mary's Im. Concep. Greek Cath. Church's Petition, 296 Pa. 307.

Appellees are not members of the church corporation and therefore cannot oppose appellants' bill and are not entitled to the injunction granted them: Myers v. Lohr, 72 Pa. Superior Ct. 472; Beck v. Boro., 2 Pa. C. C. 511; Mix v. No. American Co., 29 Pa. C. C. 137; Baird v. Rice, 63 Pa. 489; Beeman v. Supreme Lodge S. of H., 215 Pa. 627.

*Thomas F. Garrahan,* with him *George Zatkovich,* for appellees.—Under the Canon laws of the Roman Catholic Church of the Greek Rite, Bishop Takach had the right to appoint and install a priest or pastor for the First Slavish Church, and did appoint Rev. Peter Molchany, a fit and proper person, as pastor therefor: Furmanski v. Iwanowski, 265 Pa. 1; Dayton v. Carter, 206 Pa. 491; Zernosky v. Kluchinsky, 278 Pa. 99; Macerinas v. Chesna, 299 Pa. 70.

The proposed sale of the church property under the resolution of May 12, 1929, was illegal and cannot affect the right of the bishop to appoint and install a priest for the church: St. Joseph's L. Roman Catholic Church's Petition, 270 Pa. 73; Schnorr's App., 67 Pa. 138; Greek Catholic Church v. Orthodox Greek Church, 195 Pa. 425.

Defendants are members in good standing of the church under all the circumstances of this case: Ebaugh v. Hendel, 5 Watts 43; Hibernia Fire Engine Co. v. Harrison, 93 Pa. 264.

So much of the by-laws of January 1, 1928, as imposed the penalty of expulsion from membership in the church for dues prior to January 1, 1928, was ex post facto, and beyond the power of the corporation to enact or enforce: Beeman v. Supreme Lodge, 215 Pa. 627; Com. v. German Society, 15 Pa. 251; Macavicza v. Workingman's Club, 246 Pa. 136; Hibernia F. Engine Co. v. Harrison, 93 Pa. 264.

OPINION BY MR. CHIEF JUSTICE FRAZER, May 11, 1931:

For more than three years, the congregation of the First Slavish Roman Catholic Greek Rite Church of Clairton has been in the throes of factional conflict and division. The three individual plaintiffs are the trustees of the church and defendants represent a faction in sympathy with the installation of Reverend Molchany as priest of the congregation. This is the second occasion upon which a phase of this controversy has been before us. In an earlier equity suit, in which all present defendants were plaintiffs and the present trustee-plaintiffs were defendants, the latter were enjoined from consummating a sale of the church property and parish house: Pido v. First Slavish Church, 298 Pa. 231. In the present proceeding, a preliminary injunction was granted restraining defendants from forcibly installing a priest to conduct the spiritual affairs of the church in question; the bill averring that, without the decree prayed for, riot, disorder, and bloodshed would result. A subsequent motion to continue the preliminary injunction was refused. Defendants in their answer set forth new matter and also prayed for injunctive relief; plaintiffs in turn filed an amended bill of complaint; the court, after hearing, entered a decree nisi in defendants' favor. Later, a final decree was entered enjoining plaintiffs from obstructing the installation of Reverend Molchany, the appointee of the bishop of the diocese, directing them to turn over the keys and occupancy of the church edifice to the appointee for the purpose of conducting public worship, and dismissing plaintiffs' bill. From this decree plaintiffs have appealed.

In whom is vested the lawful authority to appoint and install the priest is the controlling question here for determination. The bishop of the diocese claims that power, while plaintiffs assert the members of the congregation alone have authority to select their spiritual advisor. The two further matters for consideration are, whether defendants have ceased to be members of

the congregation because of nonpayment of dues, and whether by-laws providing for automatic expulsion of members delinquent in their dues are lawful and were adopted at a legal meeting of the congregation. The facts found by the chancellor, all of which were supported by evidence, show: that plaintiff church is a corporation of the first class, created "for the purpose of supporting public worship according to the doctrine, forms, tenets and ritual of the Roman Catholic Church Greek Rite," and is united with Rome and organized under the Union established by the Council of Ungwar in 1646, whereby Greek Catholic churches united with the Roman Catholic Church and are under agreement to recognize the Roman Pope as their spiritual head; that it is the owner in fee of the church properties involved; and that it has been without the services of a priest since the year 1925. On the question of authority to appoint a priest for the congregation, the court found that the canon law of the Union of the two bodies provides: "The right to appoint and place priests belongs to the local Ordinarium, but if it can be legally proved then there can be an election or presentation." By ordinarium is meant a bishop, an administrator, the head of the diocese. The appointment of Reverend Molchany was made by Bishop Takach, who, at that time, held the office of bishop of the diocese embracing plaintiff church. Plaintiffs do not contend the appointee is unfit in any particular, nor that Bishop Takach is without jurisdiction in spiritual matters. Their objection is that the bishop is without power to install his appointee, and in support of this contention they point to a by-law adopted at a congregational meeting held on January 1, 1925, under which, it is argued, the trustees are empowered to choose a priest for the congregation, and, further, that, since the corporation is in process of being legally dissolved, the bishop should not be permitted to make such appointment.

Following dissolution of the preliminary injunction, plaintiff-trustees locked the doors of the church properties, secreted the keys, and openly declared they would persist in such conduct and thus prevent Reverend Molchany from serving as priest of the congregation. Although the bill averred defendants would forcibly install Reverend Molchany as priest against the wishes of plaintiff-trustees, and that disorder and bloodshed would follow, the chancellor refused to find this as a fact.

Plaintiffs' contention is that defendants are not members of the congregation, and hence are without right to the affirmative relief prayed for, because of not having paid dues during the time the church body has been without a priest, i. e., since 1925. Although, previous to the time named, it was customary for members to make contributions to the congregational treasury, there is no evidence that its trustees or other proper officers previous to January 1, 1926, had either levied dues and made membership contingent upon such payments, or provided for expulsion as the penalty for nonpayment. We fail to find proof that the congregation had adopted by-laws before the year 1925. In December, 1927, a meeting of the congregation was called for January 1, 1928, one of the principal purposes stated in the call being to adopt by-laws. Notice of this intended meeting was given by the cantor at vesper services and served personally upon 279 persons; 68 of these notices, either because of duplication in making service or owing to the recipient's nonmembership in the church, were ineffective. In other words, 211 persons were served, and this number the court found was the total membership on January 1, 1928. One hundred and twenty-nine members, composing a quorum, were present at the meeting at which the by-laws in question were adopted. These by-laws declared a forfeiture of membership by all members of the church delinquent in payment of dues at the time of their adoption. This new rule made no provision for a hearing of the alleged delinquents, nor for

a vote of expulsion; it merely stipulated that any member delinquent for more than three months should "automatically......cease to be a member of this corporation, and [should] lose all rights of membership in the affairs and property of the corporation." A by-law prescribing automatic and summary dismissal from membership in an incorporated organization for nonpayment of arrearages is illegal and unenforceable: Diligent Fire Co. v. Com., 75 Pa. 291, 296, and cases there cited. "Even when allowed by the charter, there must be some act by the corporation declaring expulsion, and this cannot be done without a vote of expulsion after notice to the member supposed to be in default": Macavicza v. Workingman's Club, 246 Pa. 136, 140-41. The reason for notice has been stated by this court thus: "It may be, that he [the defaulting member] may either prove that he is not in arrears, or give such reason for his default as the society may think sufficient": Com. v. Penna. Beneficial Inst., 2 S. & R. *141, 142. "The right of membership is valuable and not to be taken away without an authority fairly derived, either from the charter or the nature of corporate bodies. Every man who becomes a member looks to the charter; in that he puts his faith, and not in the uncertain will of a majority of the members": Com. v. St. Patrick Benevolent Society, 2 Binn. 441, 449. The whole tenor of the action on the part of the faction originally seeking to sell the church property and dissolve the corporation, and now endeavoring to prevent the installation of Reverend Molchany, clearly indicates an unwarranted and unlawful attempt, by adopting the present by-laws, automatically to expel members desiring installation of the bishop's appointee, and, as the court below found, this latter group "adheres to the purpose for which the church was incorporated." Since a quorum was present, it is apparent the by-law in question was legally adopted, but for the reasons given above, it is without validity and incapable of depriving defendants of their

membership. As to the custom averred and the by-law said to vest the trustees with power to select their own priest, we agree with the third and fourth conclusions of law made by the court below, that, "Plaintiff corporation could not by custom alter or nullify the ecclesiastical law of the Roman Catholic Church relative to the appointment and installation of priests in such ecclesiastical jurisdiction," and "Plaintiff corporation had no power to adopt......by-laws vesting in it authority to appoint a priest for the congregation." Inasmuch as it appears the priest designated is a fit person, appointed by proper ecclesiastical authority, is prepared to carry on in this congregation the very purposes for which it was formed, and that defendants' prayer for equitable relief is proper, plaintiff-trustees should be restrained from opposing Reverend Molchany's installation. A careful reading of the record reveals no valid reason for barring the properly appointed priest from his church and congregation.

As to the argument that the church was being dissolved, the following facts are pertinent: A second congregational meeting was held on May 12, 1929, at which it was again resolved to sell the entire church property, except the cemetery, and to dissolve the corporation. The court below found this meeting was attended only by members of the faction which previously attempted to dispose of the property, that defendants, not being recognized as members, were not favored with notice of the meeting and consequently did not attend, and that only 33 members, being less than a lawful quorum of the entire membership, were in attendance. Appellants argue that the by-laws adopted on January 1, 1928, were in effect at the time of this second meeting. These rules provided for notice of congregational meetings from the pulpit on two successive Sundays and by posting, and that "25 members shall constitute a quorum." The notice requirement was fulfilled and 33 members were present at the May meeting. Although these 33 unani-

mously resolved to sell the property and dissolve the corporation, such action was ineffective. By statute, the property of a religious congregation is held subject to the control and disposition of the lay members, and since the by-laws of January 1, 1928, by the provisions as to notice of meetings, worked to exclude defendants from this meeting of May 12, 1929, the resolution to sell and dissolve adopted by a part of the lay membership, the other part not having had notice of the meeting, was of no valid effect: St. Joseph's Roman Catholic Church Petition, 270 Pa. 73. Since the two kinds of notice, provided by the by-law, both took place within the church, and the provisions of these by-laws, above referred to, had prescribed termination of defendants' memberships in that church, the chancellor's finding that the defendant faction were not notified is supported by the evidence.

As we said in St. Mary's, etc., Church Petition, 296 Pa. 307, 310, "we think that controversies such as this should not be decided on narrow technical lines." Proceeding on that basis, we find much in the record to support the view expressed by the court below, that "we cannot escape the conviction that their [the plaintiffs'] actual purpose in opposing [Reverend Molchany's] entrance is to facilitate a sale of the church property and a division of the proceeds among their own faction, to the exclusion of defendants and all others who oppose such congregational destruction." Until the congregation, by proper action of its membership, taken in a strictly legal manner, shall have disposed of its house of worship, the trustees are in duty bound to permit public worship therein, according to the doctrine and forms of the Roman Catholic Church Greek Rite. That the performance of such duty may be enforced at the suit of members of the congregation, and that a court of equity has power to direct the admission of the duly appointed priest, is not open to question: Chrapko v. Kobasa, 271 Pa. 447.

The final decree entered on January 17, 1931, is affirmed; costs to be paid by Steve Powanda, Vasil Varhola and George Holadak, individually.