Botko et al. *v.* National Slovak Society of United States of America, Appellant.

Argued March 3, 1936.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, PARKER, JAMES and RHODES, JJ.

*Peter P. Jurchak,* with him *Paul R. Selecky* and *John
A. Willo,* for appellant.

*George I. Puhak,* with him *Mose H. Salsburg,* for
appellees.

OPINION BY JAMES, J., July 10, 1936:

Frank Botko and John Botko, Jr., sued in assumpsit
upon a beneficial certificate in the sum of $1,000 issued
by the National Slovak Society upon the life of their
father, John Botko, Sr., who died August 5, 1931. The
defense was that the deceased member had been ex-
pelled for nonpayment of dues. The jury found for
the plaintiffs in the sum of $891.30. Defendant's
motions for a new trial and judgment n. o. v. were re-
fused and judgment entered, from which this appeal
was taken.

In 1895, John Botko, Sr., became a member of as-

sembly No. 49, a subordinate lodge of the appellant society, and the beneficial certificate was issued to him; his wife being named as beneficiary. On the death of his wife in 1918, the two sons, plaintiffs herein, were named beneficiaries. The deceased member had been in default for several years, but during the year 1930, as a result of efforts by the officers of the local lodge, $92 had been paid by the beneficiaries upon his account. No moneys were paid in 1931, and on the 1st of May 1931, the total arrearage was $38.69. At a meeting held during May, 1931, the member was "put out......for not paying monthly dues." The monthly dues at the time of his death, and for some time prior thereto, were $3.82, of which $3.11, designated as mortuary assessments, and 21 cents, as administration costs, were forwarded to the national organization and the balance of 50 cents retained by the local lodge. Up to the 1st of May, 1931, the local lodge had advanced, to the national organization, the amounts due on the membership of the deceased.

John Botko, Jr., testified as follows: "...... A. Late in June I went in to George [George Tomaschik, supreme president and also treasurer of the local lodge], that was before the father's death—I went in there and seen him, and told him I wanted to pay up the father's dues, and asked him the whole amount, and he told me to go and see his brother Joe [Joseph Tomaschik, financial secretary of the local lodge] and I went there late in the evening, and he was sitting down outside, and I told him about it. Well he said no ...... Q. What did you tell him? A. I wanted to pay up my father's dues—the full amount, and then he told me he was expelled, and I told him it was a shame to expel a man after paying for thirty-six years, and he told me he couldn't take my money, and he didn't take it." This testimony was denied by George Tomaschik and Joseph Tomaschik, both asserting they had

no conversation with John Botko, Jr., between the time of the expulsion and the death of the father.

Appellant complains of the following portions of the court's charge: "...... If you believe John Botko, that before his father died, he made a tender to reinstate his father, having tendered that money, and that it was refused, notwithstanding the fact that he had a right to tender it, then your verdict should be for the plaintiff ...... the plaintiff seeks to recover and testifies that he endeavored to make payment on behalf of his father the latter part of June, which is denied by the Financial Secretary. He said no conversation of that kind occurred until afterward. Now I am going to leave this case to you, on that point ...... if you believe that there really was a tender before the death, then you may bring in a verdict for the plaintiff, for $1,000 with interest from September 5th."

Although the record does not clearly establish that notice was sent to the member prior to his removal from the roll—the beneficiaries had been repeatedly notified of the necessity that the dues be paid—it does show that the member was dropped from the roll in May, 1931, and no further payments made on his membership by the subordinate lodge to the national organization. Whether we regard this action of the local lodge to be expulsion, suspension or "put out," as appears from the minutes, the deceased member was not in good standing as required by the beneficial certificate and as required by article 6, section 37-m, which provides: "The member who fails to pay his regular and special dues or fines within sixty days from the date they become payable, shall be expelled from the organization without further notice," and by article 7, section 38, "A member can be expelled from the organization: for violating the By-Laws as provided in Article VI, for the nonpayment of his regular or special dues or fines at the prescribed time ......." In the recent

case of Pizur v. Greek C. Union, 119 Pa. Superior Ct. 266, 180 A. 753, we had occasion to discuss similar by-laws and there held that although a member cannot be expelled without a vote of expulsion after notice to the member supposed to be in default, still the failure to pay the dues within the period prescribed by the by-laws made the member subject to expulsion and, therefore, not in good standing.

Plaintiffs contend that subsequent to May, 1931 and prior to his death, the deceased became a member in good standing by the tender of the full amount of dues then owing.

Article 2, section 10 of the constitution and by-laws of the society provides: "A former member, who was expelled for nonpayment of dues, may be re-admitted into the same Assembly, provided that he applies for membership within six months, and pays his arrears in dues and 50 cents for initiation. But after three months from his expulsion he must present a new medical certificate showing that he is physically sound. After the expiration of six months he can be admitted only as a new member." Under this by-law, two things are essential in order that a former member be re-admitted, i. e., an application for re-admission within six months and the payment, or tender of payment, of arrearages and initiation fee. As it was alleged to have been made in June, no question is raised as to the time of the tender. The by-law does not require the application for re-admission to be in writing or made in any specific manner and the actual payment, or tender of payment, of the amount due, would, by implication, contemplate an application for re-admission, as the payment of the full amount would be for no other purpose than re-admission of the member. Nor was it necessary that a definite sum be offered when, if the testimony is to be believed, the full amount of the dues was offered to be paid not only to the treasurer, but

also to the financial secretary of the lodge. The failure to tender a definite sum could easily be explained by reason of the various increases that had been made in the dues. The record indicates considerable confusion in this respect, as the minutes fixed the amount due as $73, while the correct amount was $38.69.

Appellant further contends that as the by-laws provide the dues shall be remitted to the treasurer, a tender to the financial secretary was invalid. The son went to the treasurer to pay the full amount of the dues and was directed by him to go to the financial secretary to whom he stated he wanted to pay up the full amount of his father's dues, which was refused by him because the father had been expelled from membership. It further appears payments had been made on other occasions directly to the financial secretary. Under these circumstances, the offer, to pay the full amount of the dues to the financial secretary, was a valid tender.

As we view this record, it presents a clear question of fact to be submitted to the jury as to whether or not an actual tender had been made. It was for them to weigh the credibility of the witnesses and determine their truthfulness: Kascak v. United Soc. G. C. Religion, 117 Pa. Superior Ct., 423, 177 A. 338; and the quoted portion of the charge fairly submitted the sole question involved.

We are not unmindful that the testimony, upon which this verdict is based, leaves the door open to claims of a doubtful character, but it is not our province to pass upon the credibility of witnesses. Had the trial judge, who heard the witnesses, granted a new trial on the ground that the verdict was against the weight of the credible testimony, he would have been fully justified; but that function was his and we cannot say that, in refusing a new trial, he abused his discretion.

The assignments of error are overruled and the judgment is affirmed.