Matura et ux., Appellants, *v.* United Societies of Greek Catholic Religion of U. S. of America.

Argued April 29, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Gregory Zatkovich,* with him *David B. Fawcett,* of *Zatkovich & Fawcett,* for appellants.

*Francis Taptich,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

In December, 1919 the defendant corporation, a beneficial society, issued a membership certificate insuring the life of John Matura, Jr., then a member of a subordinate lodge, for the sum of $2,000, naming his parents as beneficiaries. A new certificate, dated July 31, 1929, for the same amount, was delivered to the parents, and upon this certificate they brought suit. The case was tried by a judge without a jury, and judgment was entered in favor of the plaintiffs in the sum of $19.25, being the amount of dues paid from April, 1929 to January, 1930, tendered by defendant in its affidavit of defense. Motions to open the judgment and for judgment upon the whole record were refused. From the judgment entered, the plaintiffs have appealed.

The assured became a member of the society on December 6, 1919 and disappeared in 1922. During his absence, the dues were paid by his parents, the last payment being made in January, 1930. By a decree of the Orphans' Court of Allegheny County, dated June 11, 1935, to No. 398 March Term, 1930, an absentee proceeding, John Matura, Jr., was decreed legally dead as of November 30, 1929. A by-law of the society, in force at the time assured became a member, and the beneficial certificate provided that the member was bound by the articles of incorporation or laws of the association then in existence, and by amendments made subsequent to the issuance of the certificate. Another by-law, paragraph 62, provided that, "If a member travels to the old country or to any foreign country or without notification goes to a place where his whereabouts are

unknown, as soon as the secretary of his lodge shall learn of this he shall immediately expel such member both from the lodge and the society." In 1928, this by-law was changed to read as follows: "If a member travels to any foreign country or without notification goes to a place where his whereabouts are unknown, such member shall be immediately expelled by his local lodge." Paragraph 65, another by-law enacted at the same time, provided: "No lapse of time or absence or disappearance of any member heretofore or hereafter admitted into the Society, without proof of actual death in good standing, shall entitle his or her beneficiary or beneficiaries to recover the amount due on the benefit certificate. Such disappearance or long continued absence shall not be accepted as evidence of death. It shall be the duty of every member to notify his or her branch society of any permanent change of residence and to keep the branch society advised of his or her post office address.

"If any member disappears from any place or neigh-borhood in which he shall have resided and his residence is not made known to his or her family or to the secretary of his or her branch society, and if such absence or disappearance, together with the failure to report such a change of residence, shall be continued for one year, such member shall stand suspended as in the case of suspension for non-payment of assessments, and the branch society shall not receive any dues or assessments from any person on behalf of such member."

At a meeting of the subordinate lodge of the society, held April 7, 1929, the Matura matter was considered. The minutes of that meeting, taken by Andrew Petach, who was also secretary for the society, are in part as follows: "Brother president brought the matter of John Matura, Jr., of whose whereabouts no one knows, it was moved by John Juna, seconded by A. Goc, to proceed according to the by-laws of Sobrana and to accept

no more dues, because the by-laws so provide; that is, to a certain time, December, 1929; the parents must furnish his address or he himself. Carried, and he remains expelled." Prior to April 7, 1929, the parents had not been requested to furnish the son's address. The local secretary continued to accept dues, amounting to $19.25, from the mother on behalf of her son until January, 1930. He testified that he accepted the dues on her promise that she would have the address of her son by December and that instead of sending these dues to the headquarters, as was customary, they were kept in the local lodge treasury. On an exhibit offered by the society, following an item showing the payment of $4.66 for dues in January, 1930, appeared a notation, "February expelled from lodge." The local secretary testified also that in April, 1929, he reported to headquarters that John Matura, Jr. had been expelled, and Andrew Petach testified that he received this notice. The new beneficial certificate, date July 31, 1929, was delivered to the mother of assured by the secretary of the local lodge with the knowledge of Andrew Petach.

By introducing in evidence the beneficial certificate, the decree of the orphans' court establishing the date of the assured's death as November 30, 1929, and proof of the payment of dues to January, 1930, plaintiffs made out a prima facie case: *Pisko v. First Catholic Slovak Union,* 119 Pa. Superior Ct. 73, 179 A. 863. The burden was then on the defendant to prove either an expulsion or a suspension of the member. The court below found as a fact that the resolution, adopted by the lodge on April 7, 1929, operated as an expulsion. With this conclusion we do not agree. The motion was not to expel but "to accept no more dues, because the by-laws so provide; that is, to a certain time, December, 1929; the parents must furnish his address or he himself." If the member was expelled on April 7, 1929, the reference to December, 1929 was meaningless. Nor was there any

reason then to state that the address must be furnished. The words "and he remains expelled," which appear in the minutes, were merely the conclusion made by the secretary. Defendant's interpretation of the minutes is that the member was expelled as of April 7, 1929, but was to be reinstated if the address was furnished by the parents or the assured by December, 1929. Conceding that this meaning can be drawn from the language of the motion, yet it can be as well construed to mean that the dues were to be collected to December, but not thereafter, at which time he would be expelled.

"Where two equally reasonable interpretations are possible that one should be adopted which will enable the beneficiary to recover, and if of doubtful construction, a by-law should not be interpreted in aid of an attempt to work a forfeiture. Similarly a by-law providing for a forfeiture of the right to share in the benefits of the association will be construed most strongly against the latter": 19 R. C. L. §16, page 1196. " 'It is a familiar principle that insurance policies should have a reasonable construction in view of the intent of the parties, regard being had to the nature and situation of the thing insured, and as the policy of insurance is the language of the company insuring, if there be any ambiguity, it is taken most strongly against the insurer, and if reasonably susceptible of two interpretations, it is to be construed in favor of the insured so as not to defeat without necessity his claim to indemnity' ": *Gold v. Commercial Ins. Co.,* 124 Pa. Superior Ct. 181, 188 A. 360. " 'Where the terms of a policy are susceptible, without violence, of two interpretations, that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted' ": *Sokolowski v. Mickiewicz,* 92 Pa. Superior Ct. 247, 251. With still greater reason should these familiar rules be applied to the interpretation of the minutes of a beneficial society. A fair interpretation

of the minutes is, that December, 1929 was the limit of time, within which the parents or assured was to furnish the address, and upon failure to do so no more dues would be accepted. In our opinion, the language of the minutes did not warrant the court in reaching the conclusion that the assured was expelled from membership on April 7, 1929.

Moreover, there is a further obstacle which prevents a conclusion that the member was expelled on April 7, 1929, and that is that he could not have been expelled without a prior notice to him or his beneficiaries that such action was contemplated. There is no doubt that the requisite notice was not given. Andrew Petach testified: "A. After April 7, 1929, he was notified that his son would be expelled from the organization. Q. Was there any notice given before April? A. No." "And even when allowed by the charter there must be some act by the society, declaring the expulsion, and this cannot be without a vote of expulsion, after notice to the member supposed to be in default. For the reason that plaintiff's expulsion was voted without notice to him we hold the defendant's answer insufficient......": *Macavicza v. Workingman's Club*, 246 Pa. 136, 92 A. 41; *Powando v. Pido*, 304 Pa. 42, 155 A. 90; *Pizur v. Greek Catholic Union*, 119 Pa. Superior Ct. 266, 180 A. 753. It is immaterial whether the alleged expulsion was attempted under the authority of the by-law in effect at the time the assured joined the society, or under the by-law as amended in 1928. In either case the attempted expulsion was ineffectual for the reasons stated above.

It is further contended by the defendant that if the action of the lodge did not expel the member, it did operate as a suspension under paragraph 65 of the by-laws, which was in effect from September 1, 1928, and that consequently he was not in good standing at the time of the decree. A portion of this by-law provided

that the presumption of death shall not be accepted as evidence of death, but that proof of actual death in good standing must be furnished. This portion of the by-law is not binding upon this assured or his beneficiaries even though the assured had agreed, upon joining the society, to be bound by future by-laws. Such a by-law, enacted subsequent to his disappearance, is not valid as to him: *Gurnacki v. Polish R. C. Union,* 113 Pa. Superior Ct. 189, 172 A. 480; *Roblin v. Knights of the Maccabees,* 269 Pa. 139, 112 A. 70; *Coffey v. The Maccabees,* 292 Pa. 58, 140 A. 551. The by-law further provides: "If any member disappears from any place or neighborhood in which he shall have resided and his residence is not made known to his or her family or to the secretary of his or her branch society, and if such absence or disappearance, together with the failure to report such a change of residence, shall be continued for one year, such member shall stand suspended as in the case of suspension for non-payment of assessments, and the branch society shall not receive any dues or assessments from any person on behalf of such member." By-law 29, which provides for suspension for non-payment of assessments, is as follows: "Any member who is in arrears for one month and who does not pay his indebtedness within fourteen days after the monthly meeting, *such member shall be notified* that his membership will be forfeited unless he pays his dues at the next regular meeting, but under no circumstances shall such membership continue more than two months......and if by the second month at the regular meeting of such member's lodge, his indebtedness is not settled, his lodge, that is, its officers, are required to expel him both from the lodge and the society without further notification." (Italics ours). Under this by-law, prior notice is a prerequisite to suspension by the lodge, and it is clear from the testimony of defendant's witness such notice was

not given. Under such proof, the provisions of paragraph 65 cannot be invoked.

Plaintiffs having established a prima facie case, and the resolution not being effective, either as an expulsion or a suspension of the assured, the lower court should have found in favor of them.

Judgment reversed and is herein directed to be entered in favor of the plaintiffs.