Opinion by
 

 Stadteeld, J.,
 

 This is an action in assumpsit brought by Mary Szidor, as beneficiary on a membership certificate, against Greek Catholic Union of Russian Brotherhoods of United States of America, a fraternal benefit society, in the County Court of Allegheny County.
 

 Plaintiff’s, statement of claim averred that the defendant issued its written benefit certificate to John Szidor, through its local lodge No. 209 at Webster, Pa., and thereby agreed to pay in conformity with the bylaws of said union, the sum of one thousand dollars to the plaintiff, who is designated as beneficiary by the said insured, upon the death of the insured, who was a member of the defendant organization, upon condition that he die a member in good standing of defendant organization; that the said John Szidor performed all things required of him under the constitution and laws of the defendant society and the certificate of insurance; that he died on April 13, 1933; that the defendant was duly notified of the death of the insured although it had refused to furnish its form of proof of death.
 

 The affidavit of defense averred that the home office of defendant organization was in August, 1932, furnished with a monthly statement from the local lodge wherein the name of the decedent appeared as having been expelled for non-payment of dues for three months and for non-payment of his orphanage assessment; that according to the by-laws of defendant organization which affected plaintiff’s decedent, the pertinent paragraphs being paragraph 160 of the general laws and paragraphs 10 and 11 of the local lodge by-laws, plaintiff has no basis whatever for her claim for the reason that decedent, at the time of his death, was no longer a member of defendant organization. Said paragraphs, of which copies are attached to the affidavit of defense, read as follows: “Par. 160. It is an express condition
 
 *554
 
 of membership in the Greek Catholic Union of Russian Brotherhoods of the U. S. A., which all persons, becoming members, accept, that all dues, assessments, fines and other financial obligations of the members to the Union and the subordinate lodges, shall be promptly and fully paid by the members, as specified, and any refusal, neglect or failure of a member to comply with this condition will be considered a forfeiture of membership and an abandonment by the defaulting member of all his rights, claims and interest in the Union.
 

 “10. It is an expressed condition of membership in the Greek Catholic Union of Russian Brotherhoods, to which all persons becoming members agree, that all dues, assessments, fines and other financial obligations of the members shall be promptly and fully paid by the members as soon as they become due, and any refusal, neglect or failure of a member to comply with this condition is to be considered as a forfeiture of membership, and an abandonment by the defaulting member of all rights, claims and interests in or upon the Union as a member.
 

 “11. It is the duty of every member (male or female) of all three branches of the Union to promptly pay all the dues owing to the general and Brotherhood Treasuries, that is, at a regular meeting of the Brotherhood. If such a member (male or female) does not pay his (her) dues for a period of two months, he or she is automatically expelled without any further admonition.”
 

 The case was tried before Lencher, J., and a jury.
 

 Plaintiff testified on her own behalf that her husband paid the July 1932 dues at the time that he made the application for a loan and that he had no receipt book, but the dues were paid by money order. She denied that he was expelled or suspended as he had paid whatever dues he owed; that the insured would either pay his dues by money order or through registered mail and that these dues were paid to the secretary, Nick
 
 *555
 
 Csucbran, of tbe lodge at Webster, Pa.; that she saw ber husband send tbe money many times and sbe also sent it berself, and that most of tbe time sbe sent tbe money berself while her husband was working; that be was always paid up with bis dues and that be paid bis dues whenever be attended any of the meetings and if be did not pay it himself sbe would send tbe money; that be always attended tbe meetings if be was called, even though be did not owe any dues; that in 1932 be attended tbe meetings in January, July and August. Tbe first that tbe plaintiff knew of tbe defendant’s contention that be was expelled was after tbe death of tbe insured when sbe went to tbe home office at Homestead and there was told that ber husband was thrown out of tbe lodge. Sbe also testified that ber husband attended the annual meeting in Webster in 1933 and that sbe berself paid dues tbe last time for him in March, 1933; that tbe insured never received notice of any expulsion either from tbe lodge or from tbe home office in Homestead and that dues) were sent twice in March 1933 to tbe secretary.
 

 On behalf of defendant, its secretary, Nick Csucbran, testified that be expelled tbe insured on August 30,1932, a date upon which a meeting was to be held, but when in fact, no meeting was held. He said that insured was delinquent in tbe payment of three months’ dues and did not pay an assessment of $1 for tbe orphanage, and for that reason be took it upon himself to expel tbe insured. He also testified that be gave tbe insured no notice of bis intended action, held no bearing and bad no action taken by tbe lodge on bis expulsion, and although other people were expelled by vote of tbe lodge, yet tbe insured was never voted upon. He testified as to tbe amount of tbe delinquency and to tbe record of payments from a book, which was not an original book of entries, but which was made up by him from tbe pieces of bis torn original book of entries. He also testi
 
 *556
 
 fied that he would accept payment of dues not only at meetings of the lodge but at any other time and place.
 

 It appeared in the testimony of John Perdak, Supreme Recording Secretary of defendant organization, that on August 31, 1932, he received from the secretary of the local lodge a report stating that John Szidor was indebted to the lodge for three months’ dues and one year’s assessment for the orphanage, and by reason of non-payment, was expelled; that in the monthly statements issued and mailed to the Secretary of the local lodge subsequent to August, 1932, John Szidor’s name was not included among members to be assessed for dues because of his expulsion.
 

 It further appeared from his testimony that at the convention of the union at Detroit in June, 1932, no changes were made in the by-laws for local lodges; that a committee was appointed to formulate certain changes, but the same were not completed until three or four months after the convention had been held when they would be submitted to the local lodges.
 

 Certain of the by-laws of the local lodge were offered in evidence, inter alia, the following: Par. 31 of the bylaws, “Supreme Recording Secretary and his duties ...... As soon as he receives notice of a
 
 verdict
 
 of expulsion of any member, he omits such name from the membership roll, he publishes the name of such in the organ of the respective branch, and notifies the member himself of the fact. Daily he must notify the forwarding agency of the official organ of all changes in membership. If he neglects these duties, he is subject to suspension.” (Italics supplied.)
 

 Paragraph 161 reads as follows: “A member
 
 may
 
 be expelled by a subordinate lodge, of which he is a member, for default in the payment of regular dues and assessments for a period of two months and it is the duty of such lodge to expel him or her.” (Italics supplied)
 

 
 *557
 
 Paragraph 162: “The order of expulsion in such case, must be made by the lodge at a Tegular meeting, and notice that such action will be taken at such meeting unless he appears and shows good cause why he should not be expelled, must be given to the member at least one week before the meeting.”
 

 Paragraph 171: “A sentence of expulsion by a subordinate lodge must be pronounced at the next lodge meeting after the lodge jury has tried the case and rendered a verdict of guilty against the member.”
 

 Section 12 is contained in the 1929 by-laws, but omitted from the 1932 by-laws. Section 12 provides, “When a member having defaulted in the payment of dues, or assessments does not pay the same within the time provided, the Secretary will give another notice in writing either by person or registered mail, as above provided, that this default will be presented at the next meeting of the Supreme Assembly, and unless he appears at the meeting and shows good reason for his default, and settles his arrears, he will be expelled from membership.”
 

 Section 14 is as follows: “The secretary shall notify the Supreme officers of every such expulsion or reinstatement immediately after the
 
 hearing,
 
 at which the action was taken.” (Italics supplied.)
 

 Any changes in the by-laws after the convention of 1932 were not in force at the time of the alleged expulsion of decedent, in August of 1932. Under the by-laws quoted, supra, decedent was entitled to notice and a hearing before the lodge and formal action by the latter before he could be lawfully expelled. These provisions were not followed and the expulsion was therefore irregular. If the by-laws attached to the affidavit ,of defense were in force at the time of the alleged expulsion, they are inconsistent with the by-laws which we have heretofore quoted and such inconsistency must be resolved in favor of the member.
 

 
 *558
 
 With the expulsion of John Szidor out of the case, the only question remaining is whether he was a member in good standing at the time of his decease, or whether he was in default in the payment of his dues and assessments to the extent that his beneficiary was deprived of any benefits under the certificate. The court bélow gave binding instructions for defendant; subsequently motion for new trial was overruled and judgment entered on the verdict. This appeal followed.
 

 Under the cases in this state, the burden of proof to show that the member was not in good standing or that he was delinquent in the payment of his dues is upon the defendant.
 

 In
 
 Tkatch v. Knights and Ladies of Security,
 
 264 Pa. 578, 107 A. 890, quoting from the opinion of the lower court, adopted by the Supreme Court, on p. 580, the court said: “1. The allegation in the statement that all conditions of the contract had been fulfilled by the assured, even when denied by the answer, does not impose upon the plaintiff the burden of proving that each particular condition was complied with. When a breach of any particular condition is relied upon, the defendant has the burden of proving it. The certificates in the hands of the defendant promising to pay a specific sum to her on the death of her husband created in her favor a presumption that the deceased had paid the dues essential to the original validity of the certificate, which presumption continues until it has been overcome by proof that validity is lost through nonpayment or other violation of conditions: 29 Cyc. 229-237;
 
 Royal Circle, etc., v. Achterrath,
 
 204 Ill. 549;
 
 Crumpton v. Pittsburgh Council, etc.,
 
 1 Pa. Superior Ct. 613.” See also
 
 Sullivan v. Supreme C. C. M. B. Ass’n,
 
 266 Pa. 57, 109 A. 604;
 
 James v. Fraternity of Home Protectors,
 
 54 Pa. Superior Ct. 375;
 
 Stidle v. Twin City Council,
 
 8 Pa. Superior Ct. 178.
 

 In 45 Corpus Juris, par. 257, p. 305, we find the fol
 
 *559
 
 lowing: “MEMBERSHIP AND GOOD STANDING IN GENERAL. While plaintiff has the burden in the first instance to show that the member was in good standing at the time of his death, yet, after he has made out a prima facie case, as by introducing the certificate showing that he was in good standing at the time of its issuance, such standing will be presumed to have continued, in the absence of proof to the contrary, and the burden is on defendant to prove that at the time of his death the member had lost his good standing.”
 

 On the question of the payment of dues, we have the direct testimony of the plaintiff that either she paid the dues herself or saw her husband pay them. This is contradicted by the secretary of the subordinate lodge, who assumed to testify from a book that was not a book of original entries and who admitted that he accepted and received dues at other times than at meetings of the lodge. We think that this raised a proper question for the jury to decide as it was a disputed question of fact. While the testimony of plaintiff was, in some respects, inconsistent and contradictory, it was the function of the jury to reconcile the same, and to pass upon its credibility. As the issue was dependent entirely on oral testimony, the case should have, under proper instructions, been submitted to the jury. See
 
 Kascak v. United Societies of Greek Catholic
 
 Religion, 117 Pa. Superior Ct. 423, 177 A. 338;
 
 Glou v. Security Benefit Ass’n,
 
 114 Pa. Superior Ct. 139, 173 A. 883;
 
 Botko v. Nat. Slovak Society,
 
 122 Pa. Superior Ct. 603, 186 A. 758.
 

 The seventh assignment of error is sustained, judgment reversed and new trial granted.