Slanina, Appellant, *v.* Greek Catholic Union of Russian Brotherhoods of U. S. A.

Argued May 3, 1943. Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt, Kenworthey and Reno, JJ.

*Paul N. Barna,* with him *J. S. Russin,* for appellant.

*Francis Taptich,* with him *John B. Szabo,* for appellee.

OPINION BY HIRT, J., September 9, 1943:

John Dudjak became a member of defendant beneficial society (hereinafter referred to as the Union) in 1916. It is conceded that at his death, on February 14, 1938, $1,000 was payable to plaintiff, the beneficiary named in his membership certificate, *if* he then was a member of the Union in good standing. He was summarily removed from membership in the Union on February 2, 1934 for non-payment of dues. A verdict was directed for defendant and judgment entered thereon. Plaintiff's appeal questions the refusal of the court to enter judgment in her favor n.o.v. The judgment will be reversed.

Early in 1927 Dudjak became insane and on June 21, 1928 was admitted to Retreat Mental Hospital in Luzerne County where he remained until his death. The diagnosis was psychosis with general paresis. There was a further gradual deterioration of his mind from the day of his admission, and throughout his confinement he was mentally deficient and was unable to care for even his ordinary affairs. The Union maintained a relief fund for the benefit of "all members in good standing ...... who are insane or hopelessly crippled", from which a "donation" of not more than $50 annually, when authorized by the Supreme Assembly, was payable to the helpless member. Relief from this fund was granted only upon application on forms provided by the Supreme Assembly: By-laws, pars., 72, 73. In 1928, plaintiff acting for Dudjak made written application, on a form thus supplied, for relief from the fund

for that year and a like application was made each succeeding year through 1933 (except 1929 when, for reasons which do not appear, no application was made; the member's dues for that year were paid by plaintiff.) The Supreme Assembly granted relief each year as prayed for, and from the annual 'donation' Dudjak's dues were first paid and the remainder was received by plaintiff for his benefit. Thus, by payments made from the relief fund or by plaintiff, his dues and assessments were paid in full to December 1, 1933. About two months later, he was automatically dismissed from membership in the Union for the non-payment of dues for December 1933 and January, 1934. The precise amounts of the 'donations' from the relief fund do not appear but it is admitted that the total payments after deduction for dues were not less than $200.

Paragraph 74 of the by-laws of the Union determines plaintiff's rights. It is there provided: "The limit of such relief cannot exceed the sum of $200. *If this limit is reached,* then only *yearly dues and assessments shall be paid from the Supreme Treasury.*" (Italics added.) The limit of $200 in relief *was* reached by payments from the relief fund. Thereafter Dudjak's membership was considered forfeited by the defendant not because he was not entitled to have his dues paid from the Supreme Treasury but for the single reason that he had not made *application* for their payment by the Union. It is conceded that if this formality had been observed the Union would have been obliged to maintain the good standing of this member to the time of his death by the payment of dues and assessments for him.

At the outset it may be observed that since Dudjak's membership in the Union was automatically forfeited without notice to him, his summary dismissal, though in accordance with a by-law, was illegal and unenforceable. Insanity does not excuse a member from paying dues but the law does not favor a forfeiture. *Buchannan v. Heptasophs,* 178 Pa. 465, 35 A. 873. And

expulsion from membership can be accomplished only by an affirmative act of a beneficial society and then only after notice to the member alleged to be in default. "The reason for notice has been stated ...... thus: 'It may be, that he [the defaulting member] may either prove that he is not in arrears, or give such reason for his default as the society may think sufficient': Com. v. Penna. Beneficial Inst., 2 S. & R. *141": *Powanda v. Pido,* 304 Pa. 42, 155 A. 90. *Macavicza v. Workingman's Club,* 246 Pa. 136, 92 A. 41; *Szidor v. Greek Catholic Union,* 131 Pa. Superior Ct. 552, 200 A. 316, are to the same effect. The first notice to plaintiff of Dudjak's expulsion came after his death and then only when the Union refused payment on that ground. The facts in the present case indicate the wisdom of the rule. If Dudjak had received notice, even if expelled thereafter, under par. 13 of the by-laws he would have had the right to apply for reinstatement within thirty days. His insanity and the failure merely to make formal application for the payment of his dues by the Union would have been good ground for reinstatement which the Union could not have ignored. Moreover, if notice of the alleged default had been given in February 1934, plaintiff still would have been in time to make application, in whatever form required, for the payment of the "yearly dues and assessments" from the Supreme Treasury for the year 1934 and thereafter.

Dudjak was a member of the Union at the time of his death and under any fair construction of the by-laws he then was a member in good standing. The by-laws were a part of the contract between him and the Union but they must be reasonably construed. And in paragraph 74, supra, there is nothing which either specifically or by necessary implication requires an insane member *to apply* for the payment of his dues from the Supreme Treasury after he has qualified by having received relief payments amounting to $200. There was good reason for the provision in the by-laws requiring

an application annually for payments out of the relief fund. Such payments were predicated upon actual insanity during each current year and a doctor's certificate to that effect was required. But when during succeeding years (in this case a period of six years) a member is found to be entitled to relief, it is a fair assumption that his condition is incurable and no reason exists for a formal application for remission of dues on the ground of continuing disability. The Union may be said to have impliedly recognized that such application was unnecessary for it sent no application to plaintiff in 1934 or thereafter although it had done so each year when benefits were payable out of the relief fund. Even assuming that there is ambiguity in the language of the by-law (though in our view there is not), plaintiff is entitled to recover. " 'Where two equally reasonable interpretations are possible that one should be adopted which will enable the beneficiary to recover, and if of doubtful construction, a by-law should not be interpreted in aid of an attempt to work a forfeiture. Similarly, a by-law providing for a forfeiture of the right to share in the benefits of the association will be construed most strongly against the latter': 19 R.C.L. §16, page 1196. ...... 'Where the terms of a policy are susceptible, without violence, of two interpretations, that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted': Sokolowski v. Mickiewicz, 92 Pa. Superior Ct. 247, 251. With still greater reason should these familiar rules be applied to the interpretation of the minutes of a beneficial society": *Matura v. United Societies*, 128 Pa. Superior Ct. 365, 194 A. 341.

We have no doubt as to the right of plaintiff to recover the face amount of the benefit certificate as a matter of law.

Judgment reversed and directed to be entered in favor of plaintiff for $1,000 with interest from February 14, 1938.