## Ondo *v.* Greek Catholic Union of Russian Brotherhoods, Appellant

Argued April 28, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*W. W. Stoner* and *Michael W. Huron,* submitted a brief for appellant.

*Paul N. Barna,* for appellee.

OPINION BY RENO, J., July 15, 1944:

Mary Ondo brought this action of assumpsit as beneficiary under a certificate of insurance issued by defendant, a fraternal beneficial society, on the life of her husband, Michael Ondo, who died on October 2, 1935. There was a verdict and judgment for plaintiff, and the assignments of error on this appeal include the refusal of the court below to grant binding instructions, judgment n.o.v., and a new trial, certain rulings on the evidence, and the charge to the jury.

It was admitted in the pleadings that Michael Ondo had become a member of defendant's local Lodge No.

494

26 at Homestead, Pennsylvania, in 1906 and that a certificate of insurance had been issued to him in the amount of $1,000, payable to plaintiff if Ondo died "while in good standing" in the Lodge. The certificate provided that it, together with the charter, constitution, and by-laws of the Union, the application and medical examination, signed by applicant, and all amendments to each thereof, constituted the agreement between the parties. The sole factual issue in dispute in the case was whether Ondo, by reason of nonpayment of dues, had ceased to be a member "in good standing" or had, for the same reason, forfeited his membership by the operation of certain of the by-laws of the national and local lodges.

Defendant contended that Ondo had been automatically expelled from the Union on March 31, 1934, for delinquency in dues. Paragraph 160 of the by-laws of the national organization provides: "It is an express condition of membership in the Greek Catholic Union of Russian Brotherhoods of the U. S. A., which all persons, becoming members accept, that all dues, assessments, fines and other financial obligations of the members to the Union and the subordinate lodges, shall be promptly and fully paid by the members, as specified, and any refusal, neglect or failure of a member to comply with this condition will be considered a forfeiture of membership and an abandonment by the defaulting member of all his rights, claims and interest in the Union." Paragraph 11 of the by-laws of the local lodge is as follows: "It is the duty of every member (male and female) of all three branches of the Union to promptly pay all the dues owing to the general and Brotherhood Treasuries, that is, at a regular meeting of the Brotherhood, or to a fully empowered officer of the Brotherhood. If such a member (male or female) does not pay his (her) dues for a period of two months, he or she is automatically expelled without any further

admonition." It has been repeatedly held that a by-law imposing a self-executing expulsion for nonpayment of dues is illegal and unenforceable, and that a member cannot summarily be stricken from the rolls of a beneficial society without official action by a meeting of the lodge: *Diligent Fire Co. v. Commonwealth,* 75 Pa. 291; *Powanda v. Pido,* 304 Pa. 42, 155 A. 90.; *Pizur v. Greek Catholic Union,* 119 Pa. Superior Ct. 266, 180 A. 753; *Slanina v. Greek Catholic Union,* 153 Pa. Superior Ct. 298, 33 A. 2d 807. "And even when allowed by the charter there must be some act by the society, declaring the expulsion, and this cannot be without a vote of expulsion, after notice to the member supposed to be in default": *Macavicza v. Workingman's Club,* 246 Pa. 136, 140, 92 A. 41. It is admitted that the local lodge never voted to expel Ondo, and he could not, therefore, legally have been deprived of his membership under the by-laws quoted, nor under other by-laws providing for the expulsion of delinquents, after notice, at a meeting of the local group. Furthermore, it is not clear from the record whether the latter by-laws were in force at the time of Ondo's alleged expulsion.

Consequently, the only defense urged by the Union which might be valid was that Ondo was not a member in good standing at the time of his decease because he had defaulted in the payment of his regular dues. While he might technically have remained a member of the society, the by-laws notwithstanding, the failure to discharge his financial obligations to the lodge would remove Ondo from the list of those persons in good standing with the organization: *Hamill v. Royal Arcanum,* 152 Pa. 537, 25 A. 645; *McClenaghan v. Cincinnatus Council,* 20 Pa. Superior Ct. 229; *Pizur v. Greek Catholic Union,* supra.

At the trial plaintiff established a prima facie case by proving that a certificate of insurance had been issued to her decedent, the by-laws, the death, and that

proofs of death had been furnished the Union: *Tkatch v. Knights & Ladies of Security*, 264 Pa. 578, 107 A. 890. To escape liability, the burden was then on defendant to prove its affirmative defense, Ondo's default in the payment of dues, by a fair preponderance of the evidence: *Crumpton v. Pittsburgh Council*, 1 Pa. Superior Ct. 613; *Glou v. Security Benefit Assn.*, 114 Pa. Superior Ct. 139, 173 A. 883; *Cohen v. Boslover Beneficial Assn.*, 116 Pa. Superior Ct. 55, 176 A. 30; *Matura v. United Societies*, 128 Pa. Superior Ct. 365, 194 A. 341. "When a breach of any particular condition is relied upon, the defendant has the burden of proving it. The certificates ...... promising to pay a specific sum to her on the death of her husband created in her favor a presumption that the deceased had paid the dues essential to the original validity of the certificate, which presumption continues until it has been overcome by proof that validity is lost through nonpayment or other violation of conditions": *Tkatch v. Knights & Ladies of Security*, supra, p. 580.

John Masich, the supreme financial secretary, testified for defendant that Ondo's name did not appear on the assessment bills, sent monthly by the supreme lodge to the local assemblies, after March, 1934. It was shown, however, that while Ondo's name was not on the assessments from July, 1932, to January, 1933, he paid dues to the local lodge during that period. Masich further identified a membership report for March, 1934, filed with the home office by Lodge No. 26 and bearing the information that Ondo, among others, had been expelled for debt during that month. He also produced Ondo's individual index card, of the type maintained at the headquarters of the Union for each member, which carried a notation that decedent had been expelled on March 31, 1934. This witness explained that decedent's dues were fixed at $3.27 monthly, and that the supreme body had granted him a loan in May, 1933, in the

amount then thought to be the reserve against the policy, $41, for the payment of future dues. Decedent was given credit only for $38.95 by the local lodge, however, and it was later discovered that the actual reserve at the time the loan was made had been $64.

William Kozak, former financial secretary of Lodge No. 26, testified that his duties included the collection of dues and the maintenance of a ledger, which he produced and identified, made up of separate sheets for each member. Ondo's page was missing, and his name had been crossed off the index of the book. It was explained that the record of a member would be removed from the ledger at the end of the year in which he had died, transferred, or had been expelled. Lodge No. 26 changed its meeting place from the basement of the local Greek Catholic Church to a room in the main building of the Greek Catholic Union during the latter part of the year *1935,* and a fire at the *latter* place in 1936 or 1937 destroyed many of the records, and presumably the record pertaining to decedent's dues. Kozak stated that the customary method for collecting dues was for the members to form a line and pay them to the officers at lodge meetings, but he testified that members would sometimes bring dues for their friends who were not in attendance, and that the officers of the society would accept dues from members between meetings. The witness testified that members who did not have their dues book at the time payments were made were given receipts for the amounts paid and that entries were subsequently made in the pass book upon surrender of the receipt. Kozak stated that while he did not know Ondo personally, and there were twelve Ondos in the lodge, two of whom were named Michael, he had not received any dues from deceased after March 31, 1934. He further asserted that he had never received any dues on Ondo's account from Anna Kazimer, daughter of the insured, during the years 1934 and

1935, and that if he had received payments in that period from John Ondo, decedent's brother, a receipt in proper form had been given. Because he had a practice of notifying delinquent members before invoking the automatic expulsion clause of the by-laws, Kozak testified that he had given Ondo two weeks' notice before reporting him to the home office of the Union as having been expelled. Whether notice of delinquency was actually given in this instance is not particularly material, as a member may be declared nonbeneficial, though not expelled, for nonpayment of dues without notice: *Young v. Aeolian Council,* 59 Pa. Superior Ct. 174; *Bagaj v. First Slovak Wreath,* 136 Pa. Superior Ct. 344, 7 A. 2d 376.

Anna Kazimer, Ondo's daughter, testified that she learned her father was ill early in 1934 and that she and her uncle, John Ondo, began paying decedent's dues with her funds at that time. This witness stated that if she was unable to go to the lodge meeting in a particular month she would see her uncle beforehand and give him money with which to make the payment. She was not living with her parents during this period and did not have Ondo's pass book which contained no entries after December, 1933. Mrs. Kazimer testified that she had made payments to various of the lodge officers but had never secured receipts for the amounts paid by her. She was unable to state with any accuracy the specific months in which she had made payments, or the number of times she had paid, and the credibility of her testimony depends primarily upon the substance of the alleged arrangement with John Ondo. However, the inability on her part to be precise may be an indication of her veracity, as the trial occurred nine years after the payments were said to have begun, and, following this lapse of time, a precise recollection might not be convincing. Mrs. Kazimer testified further that she had made many visits to the home office of the Union

in an attempt to secure the proceeds of the policy, but that none of the supreme officers had informed her that her father had been expelled, although the supreme president had examined his files in her presence to determine decedent's status in the lodge. The Union had required the witness to secure Ondo's birth certificate from Europe, which was done, and the certificate was introduced in evidence.

John Ondo testified that he had paid his brother's dues several times in 1934 and 1935 when Anna Kazimer had brought him the money, but that he had neither gotten receipts nor had he taken the pass book to the meetings so that the payments might have been recorded. Michael Ondo, Jr., stated that he had gone to lodge meetings with his father twice in 1934 and 1935, at which times decedent had paid his dues but had secured no receipts. He testified, also, that he had taken a proof of death to the home office of the Union after his father's decease but that the officers there had not mentioned the supposed expulsion. Mary Ondo, the plaintiff, asserted that she had discussed the payment of the death claim with the supreme president six or seven times and that he had advised her that the Union would pay the amount of the policy after deducting the sum loaned Ondo during his lifetime.

From this review of the testimony it is apparent that both parties were careless in their business methods, and at this late date it is impossible to determine to the exclusion of all doubt upon which side the merit lies. Plaintiff and her relatives were slack in the manner in which they attended to a matter of serious family concern; and the inaccuracies in defendant's books of account coupled with the dilatory tactics of its officers must have produced an unfavorable picture to the jury. At defendant's request, the jury made a special finding that Ondo's dues had been paid from April 1, 1934 to the date of his death, and the refusal of judgment n.o.v.

was proper if there was evidence on the whole record from which this conclusion could have been drawn: *Glou v. Security Benefit Assn.*, supra; *Thomas v. Metropolitan Life Ins. Co.*, 131 Pa. Superior Ct. 588, 200 A. 210. The trial court could not without error have given binding instructions for defendant, as the case presented contradictory oral testimony (*Sullivan v. Supreme Council C. M. B. Assn.*, 266 Pa. 57, 109 A. 604; *Jacobs v. Baltimore Mutual Aid Society*, 9 Pa. Superior Ct. 99), and the refusal of defendant's motion for a new trial will not be disturbed except where there appears a clear error of law or a palpable abuse of discretion: *Pfordt v. Educators Beneficial Assn.*, 140 Pa. Superior Ct. 170, 14 A. 2d 170; *Bastaich v. Zivena Beneficial Society*, 150 Pa. Superior Ct. 316, 28 A. 2d 367. A pure question of fact was developed by the evidence, and this being true, the case was primarily for the jury. See *Kascak v. United Societies of G. C. Religion*, 117 Pa. Superior Ct. 423, 177 A. 338; *Szidor v. Greek Catholic Union*, 131 Pa. Superior Ct. 552, 200 A. 316. "We are not unmindful that the testimony, upon which this verdict is based, leaves the door open to claims of a doubtful character, but it is not our province to pass upon the credibility of witnesses. Had the trial judge, who heard the witnesses, granted a new trial on the ground that the verdict was against the weight of the credible testimony, he would have been fully justified; but that function was his and we cannot say that, in refusing a new trial, he abused his discretion": *Botko v. National Slovak Society*, 122 Pa. Superior Ct. 603, 608, 186 A. 758.

The charge of the court fairly submitted to the jury the essential question of the payment of dues, and the rulings on the evidence did not prejudice the presentation of defendant's case.

All assignments of error are overruled and the judgment is affirmed.