## Diskin, Appellant, *v.* Philadelphia Police Pension Fund Association.

Argued April 13, 1951. Before STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*George F. Douglas,* with him *George F. Douglas, Jr.,* for appellants.

*James Francis Ryan,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1951:

The decision of this controversy depends on the interpretation of a by-law of the City of Philadelphia Police Pension Fund Association.

Martin Diskin was a member of that Association for a long period of years during the course of which

he paid dues in the total sum of $2,269.10. In 1946 he designated his son, his three daughters, and his sister-in-law, who are the five plaintiffs in the present action, as the beneficiaries entitled to receive the amount payable by the Association in the event of his death before receiving any pension payment. This designation was in pursuance of a section of the by-laws which provided that "Upon the death of any member *who has not received a pension payment,* . . . there shall be paid to the beneficiary or beneficiaries designated by him in accordance with these By-Laws the amount provided for in Section 2 of this Article. Upon making such payment all liability of the Pension Fund to the beneficiaries, heirs or estate of the deceased member shall be discharged and terminated." Section 2, thus referred to, provided that "The amount of money to be withdrawn shall be the total amount of the dues paid into the Pension Fund by such employee: . . . ." Another section provided that "Withdrawal payment right shall apply to any member of the Association who ceases to be an employee of the City of Philadelphia for any of the following causes: . . . (c) Upon the death of any member prior to becoming a pensioner or a pensioner *prior to receiving his first pension payment.*" By still another section: "Any pensioner, *once he receives a pension payment,* shall cease to have any right to the withdrawal privilege."

On April 30, 1948 Diskin resigned from the Police Department because of poor health and applied to the Association for a pension. His application was approved May 12, 1948, and on June 1, 1948 the Association mailed to him its check of that date in the sum of $111.05 for his first month's pension. Diskin never endorsed, cashed or negotiated this check. He died on June 27, 1948. On October 1, 1948 the Association stopped payment on the check, the assistant secretary

testifying that their pension checks were "void after thirty days"; in lieu thereof the Association mailed to the executrices of Diskin's estate its check for $214.35 covering the entire amount of the pension due from the time of his separation, April 30, 1948 to the date of his death, June 27, 1948. This check was returned by plaintiffs on the ground that they were entitled to the withdrawal payment of all the dues paid by decedent, namely, $2,269.10, because, as they contended, *no pension payment had been received by him,* and they brought suit to recover that amount. The trial court, sitting without a jury, rendered judgment for plaintiffs, but, on appeal to the Superior Court, the judgment was reversed, (168 Pa. Superior Court 76, 76 A. 2d 663) that Court being of opinion that Diskin *had* received his first pension payment before his death. We allowed an appeal from that decision of the Superior Court.

It is elementary law that, where a note, draft or check is received by a creditor from his debtor for an existing debt, the presumption is, in the absence of an agreement to the contrary, that it is received as conditional and not absolute payment, and the burden of proving the existence of such an agreement is upon the debtor. This is conceded by the defendant Association but it contends that an agreement to the contrary *did* exist because Article X, Section 7, of the by-laws provided that "Payments of pensions shall be by check drawn to the order of the pensioner, but the Board of Directors shall have the power to permit the payment to an attorney-in-fact." The Superior Court held that, since the by-laws of an association constitute a compact between the members, and the law by which they are to be governed, the provision that payments of pensions should be by check bound both Diskin and his designated beneficiaries, and that, therefore, when the check of June 1, 1948 was received by Diskin, pay-

ment within the contemplation of the by-laws was effected.

We are not in accord with the construction thus placed upon the by-law in question. We interpret its provision merely to mean that a check in payment of a pension should be drawn to the order of the pensioner and not to any attorney-in-fact except by permission of the Board of Directors,—in other words, that it was intended as nothing more than a directive to the treasurer as to how such checks were to be drawn. Similar provisions are common not only in the by-laws of corporations and associations but in statutes as well, their purpose being to provide the manner in which payments out of the funds of the organization or out of the treasury of the government should be made,—how checks should be executed, by whom, and to whom made payable. For example, the Act of August 17, 1912, ch. 301, §3, 37 Stat. 312, as amended, 38 U. S. C. A. §50, provides that "Pensions . . . shall be paid by checks drawn, pursuant to certification by the Administrator of Veterans' Affairs, by the Division of Disbursement of the Treasury Department in such form as to protect the United States against loss, . . . . Such checks shall be transmitted by mail to the payee thereof at his last-known address, . . ." Under an earlier statute which provided that the agent for the payment of pensions should draw his check on the proper assistant treasurer or designated depositary of the United States for the amount due the pensioner, payable to his order, and transmit the same by mail directed to the address of the pensioner entitled thereto, the then Attorney General of the United States was asked by the Secretary of the Interior whether, where a check had been thus transmitted by a pension agent through the mails to a pensioner and received by him, and thereafter the pensioner died without having negotiated or cashed the check, payment was thereby completed

and title to the amount called for by the check vested in the pensioner. The Attorney General answered this question in the negative (19 Opinions of Attorney General 1), stating that in the absence of a special contract the presumption was that the payment of an obligation should be made in money, that this presumption applied to a pensioner as well as to any one else, that until he actually received his money or that which in law was its equivalent he was not paid nor was the Government discharged, that if he received a check but never transferred or cashed it he had not received his money, and that the receipt of the check was not a payment but only one step in the process of payment.

Even were it to be conceded that the provision in the by-laws that payments of pensions should be by checks, drawn as there prescribed, is susceptible of two different interpretations,—either that it constitutes a binding agreement on the part of pensioners to accept checks as absolute payment, or that it is merely a direction to the Association's treasurer as to how checks in payment of pensions should be drawn,—the construction most favorable to the pensioner and his beneficiaries must be the one adopted: *Sokolowski v. Mickiewicz,* 92 Pa. Superior Ct. 247; *Matura v. United Societies of Greek Catholic Religion of the U. S. A.,* 128 Pa. Superior Ct. 365, 370, 194 A. 341, 343; *Reid v. Sovereign Camp of the Woodmen of the World,* 139. Pa. Superior Ct. 492, 496, 12 A. 2d 498, 499 (aff. 340 Pa. 400, 17 A. 2d 890); *Slanina v. Greek Catholic Union of Russian Brotherhoods of U. S. A.,* 153 Pa. Superior Ct. 298, 302, 33 A. 2d 807, 809, 810; *Caputo, Admrx., v. Societa' Italiana Vittorio Emanuele III Principe Di Napoli,* 159 Pa. Superior Ct. 312, 48 A. 2d 14.

If, therefore, as we now hold, Diskin's receipt of the check of June 1, 1948 did not constitute legal *pay-*

*ment* of his pension his retention of it for the period of 27 days until his death did not convert it into such payment, especially as it is stated by plaintiffs that for at least a part of that time he was in a hospital dangerously ill. Moreover, as the Association stopped payment of the check, it never, in any event, became effective as payment since this action of the Association, even though it sent another check in lieu of it after Diskin's death, made such payment impossible. Defendant makes a point of the fact that when the original check was sent it was accompanied by a request for the return of the certificate designating Diskin's beneficiaries and on June 22, 1948 this certificate was returned to the Association,—by whom does not appear. If it was returned by Diskin he may have had in mind that he would later cash the check; unless and until he did so, however, he had not actually received payment and meanwhile his rights and those of his beneficiaries could not be lost merely by the return of the certificate to the Association: cf. *McEnany v. Modern Woodmen of America*, 54 N. Dak. 413, 209 N. W. 978.

The judgment of the Superior Court is reversed and the judgment entered by the Court of Common Pleas No. 7 of Philadelphia County is herewith reinstated.