## Williams v. Goodwill Beneficial Association

*Snyder, Balmer & Kershner*, for plaintiff.
*Body, Muth, Rhoda & Stoudt*, for defendant.

SHANAMAN, P. J., February 27, 1959.—Marie L. Williams, plaintiff, sued Goodwill Beneficial Association of Hyde Park, a corporation, defendant, to no. 140, August term, 1955. Her suit was in assumpsit to obtain the money payments which she alleged to be due her as a widow of her deceased husband, who had been a member of defendant society, holding a beneficiary certificate therein. After a trial before a judge without jury, the trial court rendered a verdict in favor of plaintiff, 50 Berks 208. Defendant has taken rules for new trial and judgment n. o. v. Both rules involved the same points. The relevant section of the bylaws reads as follows:

"(5) Members shall be notified by the Secretary by mail of assessments due by reason of the death of a member or members, and any member not paying said

assessment or assessments within fifteen (15) days from the time of the mailing of said notices shall be suspended for a period of four (4) weeks after the said assessment has been paid. If six months intervene between the time of said notification and the date of payment said members shall be further suspended for a period of eight weeks from the time the said assessment was paid, and if nine (9) months time elapsed between the time of said notification and the time of payment, the said member is to suffer an additional suspension of twelve (12) weeks from the time of said payment. Any member who is in arrears more than fifteen days in payment of his assessment or assessments is to be a non-beneficial active member and if he dies while in arrears or during the period of his suspension, his beneficiary or Estate shall receive the sum of Ten Dollars."

The trial judge found a contradiction leading to an uncertainty of the intent and meaning of the bylaw. This was based on the language of the last sentence of the section, which first penalizes one who is in arrears more than 15 days, and goes on to penalize one who is simply in arrears. It is well established that bylaws should be interpreted "in favor of the member" and "should not be interpreted to aid in working a forfeiture" (Steel v. Driver Salesmen's Union Local No. 463, 147 Pa. Superior Ct. 172, 175), "if of doubtful construction": Matura v. United Societies of Greek Catholic Religion of U. S. of America, 128 Pa. Superior Ct. 365, 370. We have no doubt, therefore, that the true interpretation of the third sentence is that while the member is in arrears, if he has not paid before the sixteenth day after assessment, he is not regarded as punishably tardy until 30 days have elapsed since notice of assessment mailed to him. For this reason the assessments nos. 439 and 440 made on June 21, 1954, and

paid on July 17, 1954, were actually paid in good time and without fault.

It may be helpful to restate chronologically the dates of assessments and payments, and the legal position of the association and its member at the time of each. Assessments nos. 436, 437 and 438 were made on May 21st. On May 22nd a period of 30 days began to run, during the first 15 of which the member was not in arrears, and during the second 15 of which he was in arrears but not yet punishably so. The 30 days expired on June 20th and, therefore, beginning on June 21st he became nonbeneficial, although not yet suspended. His position at that time is described as "non-beneficial, active member". On June 21st two further assessments, nos. 439 and 440, were made upon him. Although he was at that time "non-beneficial, active", he was not yet "suspended". The assessments therefore were proper under the intent and language of the bylaw and did not constitute a waiver of his obligation and status under the bylaw. On July 17th he paid the five assessments hitherto mentioned, nos. 436, 437, 438, 439, 440. He thus became out of debt to the society. His payment of assessments nos. 439 and 440 was within 30 days of assessment, and therefore legitimate, proper and without penalty upon him. However, his payment of assessments nos. 436, 437 and 438 being made after the expiration of 30 days from the assessment, at a time when he was "non-beneficial, active", while it paid the said debt in full, had the additional effect of starting, under sentence one of section 5, a period of "suspension" which would last for 28 days. This suspended status began on July 18th and ended August 14th. During this period, while he was free of debt to the society, but "suspended", new assessments, nos. 441 and 442, were made upon him on July 29th. Six days later he died, on August 4, 1954. Three days

later, on August 7, 1954, the assessments nos. 441 and 442 were paid to defendant on deceased's behalf.

The trial judge refused to declare a forfeiture of the rights of decedent's beneficiary, because of the unclearness of section 5, and because of waiver by defendant. Defendant, however, points out that if the language is construed favorably to plaintiff, so that "in arrears" means "in arrears more than fifteen days", plaintiff is not helped, because, though he did not die in arrears, he did die in suspension, that section 5, therefore, is not confused as to the suspension of the deceased at the time he died. The trial judge was of the opinion that the three sentences which composed section 5 are so connected that the whole section should be redrafted, so as to remove all uncertainty. Although this is probably true, it is clear that the idea of forfeiture was present and intended in some cases. We are of opinion that since deceased did not pay the assessments of May 21, 1954, until July 17, 1954, he fell as to those assessments within the language of the first sentence of section 5, which provides for a suspension "for a period of four (4) weeks after the said assessment has been paid." Since Mr. Williams died on August 4, 1954, he died within the four weeks of suspension, and the rights on his certificate became liable to the forfeiture imposed by the third section of section 5 in case of suspension, unless the right of such forfeiture was waived by defendant society.

Owing to the vagueness of section 5, we will amend conclusions of law two and three, so as on the one hand to remove the inference of waiver from assessments nos. 439 and 440, and the action taken thereon, and on the other hand remove the imputation of tardiness in the payments by decedent of assessments nos. 439 and 440. As to the trial judge's conclusion of law no. 1 that section 5 is void, we would not go so far. Doubtless it should be rewritten because contradictory and need-

ing interpretation. However, as defendant points out, it can be interpreted, and if the result of interpretation is to allow 30 days of grace instead of 15, decedent still came into and stayed within a period of suspension, in which status he died. We will, therefore, modify the conclusions of law nos. 1, 2 and 3 accordingly.

The remaining question is whether a waiver took place. We regard this question as limited to the last assessments of July 29th, and the action taken in regard to them, because when the previous assessments were paid on July 17th, the deceased was, as to two of them, nos. 439 and 440, not in arrears, that is to say, punishable arrears, and as to the earliest three, nos. 436, 437 and 438, he was, when assessed for nos. 439 and 440 on June 21st, not "suspended" but was "non-beneficial, active". For this reason the assessments nos. 439 and 440, levied on June 21, 1954, could not be the basis of a waiver without removing all meaning from the word "active". If he was active, and the bylaw says he was so at that time, then defendant could assess without any supposition of waiver. However, as to the assessments nos. 441 and 442, levied in July 29, 1954, of which the society afterwards accepted payment, we cannot avoid a conclusion of waiver.

At the moment assessments nos. 441 and 442 were levied upon the deceased, he was free of all debt to his society through having previously paid in full all the outstanding accounts against him. He remained free of all debt thereafter, since the later payments of the later assessments nos. 441 and 442 were made in ample time under section 5. However, he was under four weeks' suspension at the time those assessments were made, and at the time the society accepted payment of them. One of the unfortunate characteristics of section 5 is the use of broad descriptive terms like "suspended" and "active" without defining or limiting them. A

member must, of course, yield to the reasonable interpretation of the bylaws which he has accepted through membership. But only a forced process of uphill construction of the language of section 5 would lead a member to understand that when suspended he was not suspended, or that the fact of suspension in no way changed his status from that which he occupied when not suspended, or that the language "active, non-beneficial" which described his condition while in debt to the society and unsuspended, was also, though nowhere so stated, a description of his condition when he owed the society nothing and had become suspended. On June 21st Mr. Williams could properly understand that he was "non-beneficial, active" and therefore could understand the propriety of the two assessments made on that date. But on July 29th, when the last assessments were made, he must have known that he was no longer "active, non-beneficial" under the bylaw; he was expressly, definitely, wholly suspended. That is what it says and nothing less. Therefore the levy of the assessments of July 29th upon him could only have meant, if he consulted the bylaw, that despite the fact that he was liable to suspension, the society regarded him as in the system and not suspended. To a member of a beneficial society, the application, interpretation and enforcement of such puzzlesome language as that of section 5, would naturally be accepted, when presented in the form of an assessment, as something that the officers knew about better than he, the member. In the natural use of language between human beings, he could not but suppose, when he received these assessments, that the society had waived his condition of suspension. Payment was accordingly offered, which the society accepted. And to strike down now the right of the beneficiary, would seem a shocking surprise perpetrated upon the member.

*Amended Conclusions of Law*

1. Section 5 of the bylaw of defendant corporation is vague and contradictory, but capable of interpretation, and is not void.

2. (A) The levy by defendant of the assessments nos. 439 and 440 on Edward T. Williams, on June 21, 1954, and the receipt by defendant of payment thereof by Edward T. Williams on July 17, 1954, along with the payment of previous assessments nos. 436, 437 and 438, did not constitute a waiver by defendant of tardiness in paying assessments nos. 436, 437 and 438, and a waiver of nonbeneficial status of the member.

(B) The payment by Edward T. Williams of assessments nos. 436, 437 and 438 on July 17, 1954, was tardy.

(C) The payment by Edward T. Williams of assessments nos. 439 and 440 on July 17, 1954, was not tardy.

(D) Edward T. Williams was suspended by the operation of bylaw 5 for a period of four weeks, beginning July 18, 1954, and ending August 14, 1954, by his payment of assessments nos. 436, 437 and 438.

3. Defendant's levy upon Edward T. Williams of assessments nos. 441 and 442 on July 29, 1954, along with defendant's acceptance of payment thereof on August 7, 1954, after the death of Edward T. Williams on August 4, 1954, took place, both as to the assessments and the payment, within a period when Edward T. Williams was suspended by the operation of section 5 of the bylaws, and therefore constituted an act inconsistent with the provision for decedent's suspension, and amounting to a complete waiver of his said status of suspension, and of any nonbeneficial status arising therefrom.

Since the verdict is not affected by our modifications of the conclusions of law of the trial judge, defendant's rules must be discharged.

And now, to wit, February 27, 1959, the rules of new trial and for judgment n. o. v. are discharged.